# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **ALLISON L. MACDONALD**, | : | |
| *Plaintiff* | : | |
| v. | : | |
| | : | |
| **HASBRO MANAGERIAL SERVICES,** | : | C.A. No. 25- |
| **LLC, alias, and HASBRO INC., alias,** | : | |
| *Defendants* | : | **Jury Trial Demanded** |
| | : | |

## COMPLAINT

### I.     Introductory Statement

**1.**     This action is brought by Allison L. MacDonald ("Plaintiff") against her former employers, Hasbro Managerial Services, LLC, and Hasbro Inc., ("Defendants") seeking compensatory, liquidated, and punitive damages, civil penalties, counsel fees, costs, and other equitable relief arising out of violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1, *et seq.*, The Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1, The Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.,* and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws. § 28-48-1, *et seq.*

### II.     Parties

**2.**     Plaintiff is a resident of the City of Medway, County of Norfolk, and the State of Massachusetts.

**3.**     Defendant Hasbro Managerial Services, LLC is a domestic limited liability company duly registered under the laws of the State of Rhode Island, with a principal office located at 1027 Newport Avenue, Pawtucket, RI, 02861.

4. Defendant Hasbro Inc. is a domestic profit corporation duly registered under the laws of the State of Rhode Island, with a principal office located at 1027 Newport Avenue, Pawtucket, RI 02861.

5. Unless otherwise specified, the term "Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action.

6. At all relevant times Plaintiff was an employee of Defendants.

### III.  Jurisdiction

7. The United States District Court for the District of Rhode Island has federal subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of 28 U.S.C. § 1331 because Mrs. MacDonald asserts claims arising under federal law; specifically, Title VII and the FMLA. Supplemental jurisdiction over the state law claims set forth herein is predicated on 28 U.S.C. § 1367 as they arise out of the same case or controversy as the federal claims.

### IV.  Venue

8. Venue is proper in this Court insofar as each of the Defendants either resides or is doing business in the District of Rhode Island, in accordance with the requirements set forth in 28 U.S.C. § 1391. Moreover, a substantial part of the acts and/or omissions giving rise to the claims asserted herein occurred in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391.

### V.  Exhaustion of Administrative Remedies

9. On or about December 29, 2022, Plaintiff co-filed a charge alleging sex and pregnancy discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), EEOC No. 16J-2023-00064, and the Rhode Island Commission for Human Rights ("RICHR"), RICHR No. 23-ESE-157.

10. On or about December 16, 2024, more than 120 days but not more than two (2) years having elapsed since the filing of the charge of discrimination, the Plaintiff filed a Request for Notice of Right to Sue with the EEOC and RICHR.

10. On or about December 16, 2024, the Plaintiff was issued a Notice of Right to Sue by the RICHR.

11. On or about February 14, 2025, the Plaintiff was issued a Notice of Right to Sue by the EEOC.

12. Accordingly, Plaintiff has complied with all administrative and/or jurisdictional prerequisites to filing a lawsuit, and Plaintiff has herein timely instituted suit in accordance with the notices of right to sue issued by the RICHR and EEOC.

13. There is no administrative filing requirement for claims arising from violations of the RICRA, the FMLA and the RIPFMLA.

### VI.   Material Facts

*Factual Background*

14. Plaintiff is a member of a protected class because she is a woman/female and, at all relevant times to the discrimination asserted herein, was pregnant and/or a caregiver to her children.

15. On or about January 23, 2012, Plaintiff was hired by Defendants as Trade Marketing Manager, U.S., working out of Defendants' Pawtucket, RI office.

16. Since the start of her employment up until her unlawful termination on October 26, 2022, Plaintiff was an exemplary employee who received multiple awards, promotions, and recognition as a result of her performance, dedication, and loyalty.

17. Plaintiff was promoted to U.S. Regional Brand Marketing Manager (Games) in

2014, selected as Global Brand Marketing Manager (Games) in 2016, selected to participate in Defendants' mentor program in 2017, promoted to Senior Brand Marketing Manager (Quick Strike) in April 2018, selected as Senior Brand Marketing Manager for Monopoly in October 2018, and nominated by Chicago Toy & Game Group, Inc. (CHITAG) for Most Innovative PR & Marketing Team of the Year in August 2019.

18. In or around January 2021, Defendants awarded Plaintiff a Retention Equity Award, which was vested, given to a select number of high performing employees, and designed to motivate and retain key talent.

19. On or about late 2021 or early 2022, Plaintiff was selected to be a member of the Hasbro High Potential Employee Group and as a peer coach.

20. On or about December 2021, Plaintiff was promoted to Director, Global Brand Strategy and Marketing – the role she held at the time of her employment termination.

21. As Director, Global Brand Strategy & Marketing, Plaintiff provided indispensable services as a critical component of Defendants' business model.

22. At the time of her termination, Plaintiff had extensive responsibilities for 1) the strategy and implementation of franchise brand products and marketing; 2) driving insight focused innovation for new product concepts and identifying critical white spaces; 3) analyzing competitive and industry data to inform marketing and product initiatives; 4) launching marketing campaigns; 5) engaging, pitching and collaborating with media agencies, creative, design, regional and retail partners; 6) delivering brand & campaign Go-To-Market plans for regional marketing teams to execute, including media content, retail, PR, brand guides; and, 7) managing a team of brand and assistant brand managers to successfully drive product development needs and marketing activities.

### *Pregnancy and Maternity Leave Disclosure*

23. In early January 2022, Plaintiff disclosed the fact that she was pregnant to her Vice President, Chedney Rodgers.

24. Subsequently, in February 2022, Plaintiff had a discussion with Human Resources regarding her need for maternity leave later in the year.

25. On June 7, 2022, Plaintiff started her maternity leave, initially on short term disability, with parental leave starting on July 19, 2022.

26. Plaintiff used her earned vacation time to extend her maternity leave with an expected return to work date of October 28, 2022, as permitted by Defendants' company policy and expressly explained to Plaintiff by Defendants' Benefits Analyst, Tasha Ferretti.

### *Employment Termination and Pretext*

27. On October 6, 2022, Defendants abruptly notified Plaintiff that she was being terminated/laid off, purportedly because her position was eliminated.

28. In light of the scope of her job duties and the importance of those duties to Defendants' business model, it is simply not credible that Plaintiff's position was eliminated and/or that Defendants did not or will not either hire other individuals outside of the protected classes or disburse her job duties to others outside the protected classes, yet without first offering Plaintiff the opportunity.

29. On information and belief, Plaintiff's position was filled by Kim Ferry, a non-pregnant female, who was given the nearly identical title of Director, Global Product Management – Monopoly & Licensed Games.

30. It is also not credible that any employer would simply terminate a high performing employee such as Plaintiff with skills essential to its core business needs absent discrimination.

31. Plaintiff's prior extensive experience, institutional knowledge, and skill set developed in her prior roles as Trade Marketing Manager, U.S. Regional Brand Marketing Manager (Games), Global Brand Marketing Manager (Games), Senior Brand Marketing Manager (Quick Strike), and Senior Brand Marketing Manager for Monopoly further support a finding that the decision to end her employment was not based on a legitimate, non-discriminatory business decision.

32. At the time of her termination, Defendants offered Plaintiff a severance package conditioned upon her executing an agreement that would, among other things, release her employment claims against Defendants, which Plaintiff declined to execute.

33. After Plaintiff informed Defendants that she believed the decision to purportedly lay her off was based on discriminatory grounds, Defendants attempted to justify Plaintiff's termination by suddenly alleging that she was a poor performer.

34. However, this was the very first time that Defendants informed Plaintiff of any purported performance issues.

35. Plaintiff was never given any prior written or oral notice of any purported performance deficiency nor the opportunity to correct any purported performance deficiency.

36. In fact, Plaintiff requested and obtained her personnel file from Defendants, which did not contain any notice of performance problems, complaints, or warnings, thus confirming the falsity of Defendants' post-hoc allegation.

37. The falsity of Defendants' allegation that Plaintiff was purportedly selected for layoff due to her performance is further supported by her recent promotions, selections, and awards.

38. It makes little sense that Defendants would promote Plaintiff in December 2021 if she was not meeting Defendants' performance expectations.

39. Indeed, Plaintiff's December 2021 promotion not only increased her title and responsibilities but also added two (2) additional people to the team that she supervised.

40. It is also not credible that, after promoting Plaintiff in December 2021 (and giving her a "Retention Equity Award" earlier in the year), Defendants would then lay her off due to purported performance issues only a few months later, a very short amount of time to gauge her performance, and only after Plaintiff disclosed her pregnancy, need for maternity leave, and additional caregiver responsibilities.

41. Plaintiff was out on maternity leave from June 7, 2022, until October 28, 2022, leaving little time for Defendants to credibly assess her performance.

42. Further, Defendants' allegation of poor performance is belied by Plaintiff's prior excellent work performance that would not and did not suddenly decline overnight.

43. Nothing in Plaintiff's performance changed between November 2021 and the purported layoff decision and Plaintiff's termination.

44. On information and belief, the decision to terminate Plaintiff's employment was made after Defendants became aware of her pregnancy, need for maternity leave, and additional caregiver responsibilities.

45. On information and belief, to the extent that anyone actually conducted a performance evaluation of Plaintiff and found it to be deficient in any way, such evaluation was conducted after they became aware of her pregnancy, need for maternity leave, and additional caregiver responsibilities, based on stereotypical beliefs associated therewith.

46. On information and belief, at least one other employee in Plaintiff's department

was terminated during Defendants' alleged "layoff" while he was out on a paternity leave around the same time as Plaintiff.

### *Gender/Sex/Pregnancy/Caregiver Discrimination*

47. The circumstances of Plaintiff's termination clearly establish a *prima facie* case of gender/sex, pregnancy, and/or caregiver discrimination under applicable law insofar as she was in the protected class, her work performance always more then met the Defendants' reasonable expectations, and she was terminated for pretextual reasons and replaced with an employee outside of the protected class. *See, e.g., Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 474-75 (1st Cir. 2002).

48. Pursuant to the FEPA, RICRA, and Title VII, including the Pregnancy Discrimination Act, Defendants were prohibited from discriminating against Plaintiff on the basis of my gender/sex and/or on the basis of pregnancy and childbirth.

49. The FEPA expressly provides that gender discrimination applies to discrimination on the basis of pregnancy. R.I. Gen. Laws §§ 28-5-7(1)(i) and (ii) and 28-5-6(2) ("[B]ecause of sex" or "on the basis of sex" includes, but is not limited to "pregnancy, childbirth and other related medical conditions.").

50. The RICRA provides that "[a]ll persons within the state, regardless of …sex…have …. the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." R.I. Gen. Laws § 42-112-1(a).[1]

---

[1] The RICRA expressly provides that the term "sex" shall have the same meaning as the term is defined in § 28-5-6.

51. The Pregnancy Discrimination Act ("PDA") codified under Title VII expressly provides that gender discrimination applies to discrimination on the basis of pregnancy, 42 U.S.C. § 2000e(k). The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

52. Additionally, it is well-established that "the assumption that a woman will perform her job less well due to her presumed family obligations is a form of sex-stereotyping and that adverse job actions on that basis constitute sex discrimination." *See Chadwick v. WellPoint, Inc.,* 561 F.3d 38, 44 (1st Cir. 2009) (*citing Nevada Dep't of Human Res. v. Hibbs,* 538 U.S. 721, 730 (2003)); *Back v. Hastings on Hudson Union Free,* 365 F.3d at 120 (identifying sex-stereotyping where employer stated that a woman could not "be a good mother" and work long hours, and that a woman "would not show the same level of commitment … because [she] had little ones at home").

53. Discrimination based on caregiving responsibility is characterized as a "sex plus" claim. *Chadwick*, 561 F.3d at 44. This refers to situations where, like here, "'an employer classifies employees on the basis of sex plus another characteristic' [and] describes the case where… 'employer does not discriminate against the class of men or women as a whole but rather treats differently a subclass of men or women.'" *Id*. at 43 (citations omitted).

54. The circumstances surrounding the decision to terminate Plaintiff's employment gives rise to a strong inference that it was motivated, in whole or in part, by her caregiving responsibilities, especially in light of her extended leave, and the stereotypical assumption that a woman/caregiver will perform her job less well due to her presumed family obligations.

### *Violations of the FMLA and RIPFMLA*

55. Under the FMLA, an employee is "entitled to a total of 12 workweeks of leave during any 12-month period…because of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C.S. § 2612(a)(1)(A).

56. Similarly, under the RIPFMLA, an employee is entitled to parental leave under the act, meaning "leave by reason of the birth of a child of an employee." R.I. Gen. Laws § 28-48-1(6).

57. Plaintiff's request for protected leave was specifically due to the birth of her child and to care for the child.

58. Therefore, Plaintiff was entitled to a protected leave of absence for the birth of her child and to care for the child.

59. Plaintiff requested, and Defendants approved, an extended leave pursuant to Defendants' policy, such that her leave remained protected until her expected return to work date of October 28, 2022.[2]

60. Therefore, Plaintiff was unlawfully terminated while on protected medical/maternity leave under the FMLA and the RIPFMLA.

---

[2] The FMLA states that "[n]othing in this Act…shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act or any amendment made by this Act."  29 U.S.C § 2653.  Courts have held that, in such context where an employee's FMLA leave period expires but the employee takes a longer leave with the employer's permission, the employee does not lose her FMLA protections.  *See Santosuosso v. NovaCare Rehab.*, 462 F. Supp. 2d 590, 597-98 (D.N.J. 2006); *Stoler v. Inst. for Integrative Nutrition*, No. 13 CIV. 1275, 2013 WL 6068598, at *9 (S.D.N.Y. Nov. 18, 2013) ("FMLA coverage applies to a plaintiff who has taken, with her employer's permission, a leave greater than 12 weeks…and [employee] did not vitiate her FMLA rights simply by taking an approved extension of leave.").

61. Pursuant to both the FMLA and the RIPFMLA, Plaintiff was entitled to return to work for Defendants following her leave pursuant to, *inter alia,* the same terms and conditions of employment she enjoyed prior to commencement of her leave.[3]

62. Defendants' decision to terminate Plaintiff's employment while on approved leave gives rise to a *prima facie* case of unlawful interference with protected rights, discrimination, and retaliation under the FMLA and RIPFMLA.

63. As mentioned above, it is not credible that Plaintiff was terminated due to any purported performance issues, and any asserted issues are being used to cover up the real reason that Plaintiff was willfully terminated, which is because she took a protected leave under the FMLA and RIPFMLA.

64. Defendants' decision to terminate Plaintiff's employment while on approved leave is clearly a willful violation of both the FMLA and the RIPFMLA because Defendants knew her leave was protected, and the evidence shows that Plaintiff was targeted for termination in large part because she exercised her rights under both acts.

### *Pretext and Discriminatory Intent*

65. The patently false and fabricated attempt to justify Plaintiff's termination is nothing more than pretext to terminate her because of her pregnancy, maternity leave, and/or caregiver responsibilities, which supports an inference of discriminatory intent.

---

[3] ***Pursuant to both the FMLA and the RIPFMLA***, an employee is entitled to return to work for her employer following her medical leave pursuant to, *inter alia,* the same terms and conditions of employment enjoyed prior to commencement of her leave. *See* 29 USC § 2614 (a)(1)(A) ("[A]ny eligible employee who takes leave . . . shall be entitled, on return from such leave[,] . . to be restored by the employer to the position of employment held by the employee when the leave commenced . . ."); *see also* R.I. Gen. Laws § 28-48-5 (b) ("It shall be unlawful for any employer to . . . in any . . . manner discriminate against any employee for exercising any right provided by this chapter.").

66. In addition to the evidence of pretext previously stated, Defendants' discriminatory intent is also established by the fact that Plaintiff was unlawfully terminated while on protected medical/maternity leave under FMLA and the RIPFMLA.

67. Pursuant to both the FMLA and the RIPFMLA, Plaintiff was entitled to return to work for Defendants following her leave pursuant to, *inter alia,* the same terms and conditions of employment she enjoyed prior to commencement of her leave.

68. Defendants' decision to terminate Plaintiff's employment while on approved leave gives rise to a *prima facie* case of unlawful interference with protected rights under the FMLA and RIPFMLA, which also demonstrates discriminatory intent.

69. Adverse employment action based in whole or *even in part* on account of a prohibited ground such as gender/sex, pregnancy, and/or caregiver responsibilities is a violation of the above cited employment law provisions.[4]

### *Pattern and Practice*

70. At all relevant times, Plaintiff was the only pregnant director-level employee on her Hasbro Gaming marketing team.

---

[4] ***Prohibited discrimination need only be a motivating factor***. *See* R.I. Gen. Laws. § 28-5-7.3 ("An unlawful employment practice may be established . . . when the complainant demonstrates that race, color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin was a motivating factor for any employment practice, even though the practice was also motivated by other factors.)(emphasis added); 42 U.S.C.A. § 2000e-2 (m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.")(emphasis added); *see also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) ("In order to obtain an instruction under [Title VII], a plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'")(emphasis added).; *Equal Employment Opportunity Commission v. Amego, Inc*., 110 F.3d 135, 141 n. 2 (1st Cir.1997)(ADA); *DeCamp v. Dollar Tree Stores, Inc*. 875 A.2d 13, 25 (R.I. 2005)(FEPA).

71. On information and belief, Defendants' decision to terminate Plaintiff's employment while she was on maternity leave is part of a pattern and practice of terminating high earning employees following or during pregnancy or parental leave.

72. On information and belief, in the past two (2) years alone, Defendants have terminated at least (3) other employees while out on or shortly after they took parental leave.

*Retaliation*

73. In addition and/or in the alternative, Defendants retaliated against Plaintiff for requesting maternity leave and taking maternity leave by terminating her employment for the pretextual reasons set forth above.[5]

74. Defendants' decision to terminate Plaintiff's employment is causally related to her disclosure of her pregnancy, need for maternity leave, and additional caregiver responsibilities, which is protected activity under the law.

### VII. Claims for Relief

75. Plaintiff incorporates in the counts below the allegations contained in ¶¶ 1 through 74 above.

**Count One**
***Violation of Title VII of the Civil Rights Act of 1964***
***42 U.S.C. § 2000e, et seq***

76. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated Title VII, insofar as Plaintiff is an individual

---

[5] Defendants' actions are also in violation of the FMLA and RIPFMLA's anti-discrimination and retaliation provisions. Specifically, employers may not (1) discriminate against employees for exercising FMLA rights; or (2) "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Hodgens v. General Dynamics Corporation,* 144 F.3d 151, 159–60 (1st Cir. 1998) (quoting 29 C.F.R. § 825.220(c)). "[T]o make out a prima facie case of retaliation, a plaintiff must show that: 1) [s]he availed [her]self of a protected right under the FMLA, 2) [s]he was adversely affected by an employment decision, and 3) there was a causal connection between the protected conduct and the adverse employment action." *Pagan–Colon v. Walgreens of San Patricio, Inc.,* 697 F.3d 1 (1st Cir. 2012).

qualified for the position, Plaintiff is a woman who was pregnant and thus a member of a protected class, and Defendants terminated her because of her sex and her pregnancy, and thereby deprived the Plaintiff of rights secured under Title VII, including the Pregnancy Discrimination Act.

**Count Two**
***Violation of the Rhode Island Fair Employment Practices Act***
***R.I. Gen. Laws § 28-5-1, et seq.***

77. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the FEPA, insofar as Plaintiff is an individual qualified for the position, Plaintiff is a woman who was pregnant and thus a member of a protected class, and Defendants terminated her because of her sex and her pregnancy, and thereby deprived the Plaintiff of rights secured under the FEPA.

**Count Three**
***Violation of the Rhode Island Civil Rights Act***
***R.I. Gen. Laws § 42-112-1, et seq.***

78. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to those described herein, engaged in unlawful employment discrimination and/or retaliation on the basis of sex in violation of the RICRA, which has caused Plaintiff to suffer damages as aforesaid, and for which Plaintiff is entitled to relief pursuant to R.I. Gen. Laws § 42-112-2.

**Count Four**
***Family and Medical Leave Act,***
***29 U.S.C. §2601. et seq.***

79. Defendants, by their acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the FMLA, causing her to suffer damages as aforesaid, and thereby deprived her of rights secured under the FMLA.

## Count Five
### *Rhode Island Parental and Family Medical Leave Act,*
### *R.I. Gen. Laws. § 28-48-1, et seq.*

80. Defendants, by their acts and/or omissions, including, but not limited to those described herein, violated Plaintiff's rights under the RIPFMLA, causing her to suffer damages as aforesaid, and thereby deprived her of rights secured under the RIPFMLA.

## VIII.   Prayers for Relief

**WHEREFORE**, Plaintiff prays that this Honorable Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendants, including, but not limited to those complained of herein, are in violation of Title VII, the FEPA, RICRA, FMLA, and RIPFMLA;

2. An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated;

3. An injunction or other equitable relief, including, but not limited to, an award of back pay, front pay or reinstatement, and other compensation and/or benefits, and to make Plaintiff whole for all earnings and benefits she would have received but for Defendants' unlawful conduct;

4. An award of compensatory damages;

5. An award of liquidated damages;

6. An award of exemplary and/or punitive damages;

7. An award of prejudgment interest, reasonable attorneys' fees, and costs; and,

8. Such other and further relief as this Court deems just and proper.

### IX. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### X. Designation of Trial Counsel

Plaintiff hereby designates Chloe A. Davis, Esq. and Danilo A. Borgas, Esq. as trial counsel.

Plaintiff,
Allison L. Macdonald
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

**Dated: March 13, 2025**

/s/ **Chloe A .Davis**
**Chloe A. Davis, Esq. (#9334)**
**Danilo A. Borgas, Esq. (#9403)**
**Richard A. Sinapi, Esq. (#2977)**
2374 Post Road Suite 201
Warwick, RI 02886
Phone: (401) 739-9690
FAX: (401) 739-9490
Email: cad@sinapilaw.com
        dab@sinapilaw.com
        ras@sinapilaw.com