**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| Allison L. MacDonald,<br>　　　Plaintiff,<br><br>　v.<br><br>Hasbro Managerial Services, LLC and<br>Hasbro Inc.,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　　C.A. No. 1:25-cv-00096-MSM-AEM |

**MEMORANDUM AND ORDER**

Plaintiff Allison L. MacDonald has two motions pending before the Court: Plaintiff's Motion to Strike Objections and Compel Discovery Responses (ECF No. 32) and Plaintiff's Motion for Sanctions (ECF No. 31). Both motions were referred to me for determination pursuant to 28 U.S.C. § 686(b)(1)(A) and Federal Rule of Civil Procedure 72(a). Based upon my review of the record, the parties' submissions, and independent research, Ms. MacDonald's Motion to Compel is GRANTED IN PART and DENIED IN PART and her Motion for Sanctions is DENIED.

**I.    Background**

This case arises out of an employment dispute in which Ms. MacDonald alleges that Defendants Hasbro Managerial Services, LLC and Hasbro Inc. illegally discriminated and retaliated against her on the basis of gender and sex, including based on pregnancy, childbirth, and her status as a caregiver to a new child. ECF No. 27 ¶¶ 15, 107-14. Ms. MacDonald started working for Defendants in 2012 and held several roles during her tenure, serving most recently as Director of Global Brand Strategy and Marketing. *Id.* ¶¶ 16, 18, 21. Ms. MacDonald began short-

term disability leave on June 7, 2022 and parental leave on July 19, 2022, then used vacation time to extend her leave until October 28, 2022. *Id.* ¶¶ 26-27. On October 6, 2022, Defendants notified Ms. MacDonald that they were eliminating her position and her employment was terminated. *Id.* ¶ 28.

Discovery commenced in this case with the Court's entry of a scheduling order in June 2025. ECF No. 7. Ms. MacDonald served interrogatories and requests for production ("RFPs") on Defendants on July 17, 2025. ECF No. 32-1 at 2. Defendants produced initial discovery responses on October 7, 2025, identifying several requests for which they would be willing to meet and confer on scope. *Id.*; *see* ECF Nos. 32-2, 32-3. The parties engaged in negotiations and Defendants ultimately agreed to make a supplemental production in response to several of the discovery requests. *See* ECF No. 32-7 (Defendants' November 26, 2025 discovery letter). Defendants conditioned their supplemental response as to several of the requests on the parties agreeing to custodians of Electronically Stored Information ("ESI") and a set of search terms that Defendants would run in order to collect potentially responsive ESI. *See, e.g.*, *id.* at 9, 16, 19.

On December 1, 2025, Ms. MacDonald's counsel sent a list of proposed custodians, non-custodial data sources, and search terms. ECF No. 32-8; ECF No. 32-9. On January 6, 2026, Defendants sent back a significantly narrowed list of custodians and search terms. ECF No. 32-10. Unable to come to an agreement on the custodians and search terms, the parties requested an informal discovery conference with the Court that was held on January 29, 2026, with a follow-up conference on February 11, 2026. The Court's understanding after those conferences was that the parties were close to agreement on custodians, search terms, date ranges, and other remaining details about how the information would be searched and produced; the parties confirmed as much with each other via email after the conference. *See* ECF Nos. 32-15, 32-16.

Then, on March 25, 2026, Defendants notified Ms. MacDonald that the agreed-upon search terms would not be workable because they hit on approximately 3.1 million documents totaling 2,547.6 gigabytes of data. ECF No. 32-17. Defendants indicated that processing and hosting that data would cost $620,000 and attorney review costs would exceed $3.1 million. *Id.* Defendants proposed that the parties "meet and confer regarding reasonable, targeted, and proportional search techniques that avoid the absurd and unwieldy results Plaintiff's proposal produced." *Id.* Ms. MacDonald refused. ECF No. 39 at 5. Defendants produced just over 100 pages of documents on March 31, 2026 and an additional small set of documents on April 6, 2026. ECF No. 32-1 at 7. Ms. MacDonald then filed the instant motions on April 16, 2026. ECF Nos. 31, 32.

## II.    Plaintiff's Motion to Compel

Ms. MacDonald requests that the Court order Defendants to provide complete responses to several interrogatories and RFPs.[1] ECF No. 32 at 1. As a threshold matter, Ms. MacDonald also seeks an order requiring Defendants to supplement their RFP responses with references to specific Bates numbers. *Id.* Federal Rule of Civil Procedure 34 provides that documents must be produced "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Ms. MacDonald does not argue that the documents were not produced as they are kept in the usual course of business and cites no authority supporting her request that Defendants supplement their responses with specific Bates references. Thus, that request is DENIED. The Court will address each specific discovery request in turn.

---

[1] Ms. MacDonald's Motion to Compel specifically asks the Court to order complete responses to Interrogatory Nos. 2, 3, 4, 5, 6, 9, 12, 13, 15, 17, 19, 21, 22, 23, 24 and RFP Nos. 1, 4, 12, 13, 14, 16, 17, 18, 19, 20, 21, 27, 28, 29, 34, 35, 36, 38, 56, and 57. ECF No. 32 at 1. Hidden within her memorandum of law seem to be additional requests that Court take certain action with regards to RFP No. 37 (ECF No. 32-1 at 24), RFP No. 39 (*id.* at 7, 14, 18) and RFP Nos. 49, 50, 51, 52, 53, 54, and 55 (*id.* at 7, 14, 18). For the sake of completeness, the Court discusses all these requests in this decision.

### A.  Requests That Have Been Responded to in Full

Defendants represent that they have fully responded to Interrogatory Nos. 2, 3, and 15 and RFP No. 1.  The Motion to Compel is DENIED as to those requests.

### B.  Responses Conditioned Upon ESI Search Protocols

The crux of the parties' disagreement as to many of the discovery requests hinges not on the relevance of the documents sought but rather on the burden of locating responsive ESI.  The parties have engaged in a needlessly ineffective and prolonged debate over search terms without first identifying the concrete universe of potentially responsive information.  A list of terms that returns over 3 million potentially responsive documents is unworkable for both parties in terms of time and expense.  A better approach would have been for the parties to first agree to custodial and non-custodial sources of documents, establishing a total universe of ESI.  Defendants' eDiscovery vendor then could have run every list of proposed search terms against the entire universe of documents in order to identify where terms were overbroad and unlikely to result in responsive information.  The parties could then negotiate over connectors and other Boolean terms in order to further narrow the results.  Utilizing these so-called "search term hit reports" would create full transparency into the resulting universe of potentially responsive documents and thus allow the parties to establish a list of search terms that would be workable for both sides.  All of this could have occurred *before* the parties utilized the Court's time and resources to have two discovery dispute conferences at which they purportedly agreed to a list of search terms despite not having even a basic understanding of how many documents those search terms would return.  *See, e.g.*, *Doelger v. JP Morgan Chase Bank, N.A.*, Civil No. 21-11042-AK, 2022 WL 22837136, at \*4-5 (D. Mass. Oct. 20, 2022) (analyzing breath and proportionality of proposed search with reference to a search term hit report "showing that the searches would result in more than 300,000

4

documents"); *Sun v. Geffen*, 25 Civ. No. 995, 2026 WL 353608, at *2 (S.D.N.Y. Feb. 9, 2026) (ordering Plaintiff to provide a hit report for counter-proposed search terms "[t]o facilitate intelligible comparison and informed negotiation").

Pursuant to Federal Rule of Civil Procedure 26(b), Ms. MacDonald is entitled to production of documents relevant to her claims and defenses that are "proportional to the needs of the case." The burden and expense required for Defendants to review over 3 million documents are not proportional to the needs of this case, to say nothing of how significantly such an undertaking would delay the case. It has already been nearly a year since discovery began. The Court is left with no choice but to order the parties to reconvene their negotiations over search terms and strongly urges the parties to utilize search term hit reports to make those discussions more efficient and effective. Collecting, reviewing, and producing additional responsive, nonprivileged documents pursuant to a mutually agreeable ESI protocol addresses RFP Nos. 4, 12, 13, 14, 16, 17, 27, 28, 29, 34, 35, and 36, as well as other requests discussed *infra*, and the Motion to Compel is thus GRANTED IN PART and DENIED IN PART as to those requests. The parties have already agreed to custodians and are now ordered to agree to a list of mutually agreeable search terms— that hit on a workable number of documents for both parties—within 30 days from the entry of this Order.[2] Defendants will then run those search terms against the agreed-upon custodial and non-custodial sources of information, review the results, and produce responsive, nonprivileged documents.

---

[2] If the parties are unable to agree, they may request an informal discovery conference with the Court. If a conference is needed, Defendants should be prepared to provide specific data supporting which search terms are overbroad.

### C.  Requests for which Ms. MacDonald has not Carried Her Burden

Interrogatory Nos. 5 and 6 are mentioned only in passing by Ms. MacDonald in her brief, noting that Defendants did not provide the requested description of any communications for which there is no corresponding document relating to Plaintiff's work performance and leave requests. ECF No. 32-1 at 15.  Ms. MacDonald similarly asks the Court to compel Defendants to provide complete responses to Interrogatory No. 9 but does not make any substantive arguments in support of this request.  *See* ECF No. 32 at 1.  In light of the broad scope of discovery already captured by Ms. MacDonald's other requests, negotiated between the parties, and contemplated by this Order, Ms. MacDonald has not carried her burden of showing that the additional requested discovery is relevant and proportional to the needs of the case.  *See TSG Plastics Trading, Co. v. Toray Plastics*, C.A. No. 09-336S, 2010 WL 936221, at *2 (D.R.I. Mar. 12, 2010).  The Motion to Compel is DENIED as to Interrogatory Nos. 5, 6, and 9.

### D.  Requests Seeking Information about Terminated/Retained Employees

Over the course of their discovery negotiations, the parties agreed that Defendants would supplement their responses to Interrogatory Nos. 17, 19, 21, 22, 23, and 24 and RFP Nos. 38, 39, 49, 50, 51, 52, 53, 54, and 55 with documentation for individuals who were retained as well as those terminated between 2019 and 2022 that identifies: (1) names (using pseudonyms); (2) dates of employment; (3) job titles; (4) department worked; (5) leaves of absence taken from January 2020 to December 2022; (6) 9-box evaluations from 2018-2024; (7) quarterly conversations; and (8) any discipline.  ECF No. 32-7 at 8; ECF No. 32-14 at 3, 5, 8, 14.  Defendants confirmed that much of this information is contained in Human Resources ("HR") systems that have been inaccessible due to a security breach, but that they will provide this information once those systems are back online.  ECF No. 39 at 6.  The Motion to Compel is thus GRANTED IN PART as to

Interrogatory Nos. 17, 19, 21, 22, 23, and 24 and RFP Nos. 38, 39, 49, 50, 51, 52, 53, 54, and 55 insofar as Defendants are ordered to provide the agreed-upon information as soon as they have access to their HR systems.

### E. "Pattern and Practice" Discovery

RFP Nos. 53, 54, 56, and 57 seek information regarding employee requests for parental leave and any complaints alleging retaliation or gender discrimination on the basis of pregnancy, gender, parental leave, and/or leave protected by the federal Family Medical Leave Act ("FMLA") or the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA").  The parties agreed the Defendants would supplement their responses to these requests by providing "documentation regarding formal/informal employee complaints, concerns, and/or allegations alleging discrimination on the basis of pregnancy, gender, parental leave, and/or taking a protected FMLA/RIPFMLA leave by the relevant decisionmakers in this case, from December 2021 to December 2024."  ECF No. 32-1 at 14; ECF No. 32-7 at 28; ECF No. 39 at 13.

Defendants assert that they completed a "thorough search" and do not maintain responsive documents as to these requests.  ECF No. 39 at 13.  Defendants confusingly also state that they will supplement their responses to RFP Nos. 53 and 54 once they have access to the breached HR systems (*id.* at 12) and separately argue that because Ms. MacDonald is not making a "pattern and practice" disparate treatment claim, she is not entitled to the discovery sought in RFP Nos. 56 and 57 (*id.* at 9-11).  As to RFP Nos. 56 and 57, Plaintiff clarifies that she is seeking company-wide complaints of gender, pregnancy, or protected leave discrimination from the last five years of Ms. MacDonald's employment to the present, and argues this information is evidence that the Defendants discriminated against other pregnant women and/or retaliated against them for taking protected leave.  ECF No. 32-1 at 16, 32.

The Court has already ruled in this case that "discovery in individual discrimination cases allows for information regarding 'employees within certain work units who have suffered similar treatment as the plaintiff' as evidence of discrimination," which may be "limited in time and scope in order to ensure it is relevant to the plaintiff's claim."  Order at 1, *MacDonald v. Hasbro Managerial Servs., LLC, et al.*, C.A. No. 1:25-cv-00096-MSM-AEM (D.R.I. Feb. 12, 2026) (quoting *Aponte Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 37 (D.P.R. 2010)).  Because of Defendants' conflicting arguments as to these requests, the Court's ruling is three-fold: (1) RFP Nos. 53, 54, 56, and 57 shall be narrowed to capture documents relating to employees in Ms. MacDonald's department from 2019 through 2024; (2) the list of search terms the parties have been ordered to negotiate shall include terms targeted towards identifying documents potentially responsive to these requests; (3) any nonprivileged documents responsive to these requests as narrowed must be produced; and (4) if, after completing steps (1) through (3), it is still the case that Defendants do not maintain responsive documents as to these requests, then they shall supplement their responses to confirm that.  The Motion to Compel is thus GRANTED IN PART and DENIED IN PART as to RFP Nos. 53, 54, 56, and 57.

### F.  Other Requests

#### 1.  Interrogatory No. 4

Interrogatory No. 4 asks Defendants to identify individuals who are known or believed to have information related to the matters in the Complaint.  ECF No. 32-2 at 4.  Ms. MacDonald argues that Defendants did not provide a complete list or appropriate contact information.  ECF No. 32-1 at 15, 37-38.  Defendants agreed to supplement their answer to this interrogatory by identifying Adam Biehl and Kim Boyd, two individuals mentioned in other responses.  ECF No. 39 at 20-21.  The Motion to Compel is GRANTED IN PART insofar as Defendants shall

supplement their answers to identify Adam Biehl and Kim Boyd in response to Interrogatory No. 4 within 30 days from the entry of this Order. To the extent that supplemental discovery responses identify additional individuals known or believed to have information related to the Complaint or otherwise discoverable information pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), Defendants shall further supplement their answers accordingly within that timeframe. However, to the extent any of the individuals identified are represented by counsel, Defendants are under no obligation to provide their home addresses and personal contact details; the Motion to Compel is therefore DENIED in that regard.

**2.  Interrogatory Nos. 12 and 13**

Interrogatory Nos. 12 and 13 ask Defendants to "describe in detail the basis, circumstances, reasons, and/or justification for Plaintiff's separation from employment with the Defendant on or about October 6, 2022" and "for the restructuring Defendant underwent and finalized on or around October 6, 2022," respectively. ECF No. 32-2 at 14. Defendants provided a fulsome response that included that Ms. MacDonald was "underperforming in her role," "was actively pursuing other opportunities in the organization," and that when Defendants began "strategizing about a reorganization" due to "budgetary reasons," they "considered moving Plaintiff into a different role" but ultimately, as a result of performance reviews, selected her for termination. *Id.* at 12.

In their November 26, 2025 discovery letter, Defendants agreed to "provide additional information as to how Plaintiff was 'underperforming in her role'" in response to Interrogatory No. 12. ECF No. 32-7 at 4. As to Interrogatory No. 13, at Defendants' request, Ms. MacDonald clarified on December 1, 2025 that she was still looking for information as to "what prompted the restructuring, what was going on when it happened, and why the company decided to do it." ECF No. 32-8 at 3. On February 2, 2026, Defendants stated that they planned to supplement their

answer to Interrogatory No. 12 after interviewing Ms. MacDonald's supervisor and would "provide information regarding what led to the restructuring of Plaintiff's department" in response to Interrogatory No. 13.  ECF No. 32-13 at 4-5.

Ms. MacDonald now asserts that Defendants never supplemented either answer and argues that she is entitled to test their claims that she was terminated due to underperformance and as part of a nondiscriminatory reduction-in-force.  ECF No. 32-1 at 13, 21, 25, 31.  Defendants acknowledge that "ESI searches will inform their answer" regarding "what led to the restructuring in Plaintiff's department" and that they will "supplement when the Parties have agreed to reasonable ESI protocols and such documentation has been reviewed."  ECF No. 39 at 19.

The Motion to Compel is GRANTED as to Interrogatory Nos. 12 and 13.  Defendants will supplement their answer to Interrogatory No. 12 with additional information as to how Ms. MacDonald was "underperforming in her role" and their answer to Interrogatory No. 13 with additional detail regarding the circumstances surrounding and justification for the restructuring. Information regarding Ms. MacDonald's performance, the circumstances around the restructuring, and her subsequent selection for termination is highly relevant to the claims and defenses in this case, and Defendant is further ordered to do a good-faith search for documents relating to these issues once the parties have agreed to search terms pursuant to Section II.B., *supra*, and to produce responsive, non-privileged documents resulting from that search.

### 3.   Request for Production Nos. 18, 19, 20, and 21

These RFPs seek text messages between Ms. MacDonald and her immediate supervisors or department supervisors (RFP No. 18), and all communications between Ms. MacDonald and Chedney Rodgers (RFP No. 19), Tasha Ferretti (RFP No. 20), and Tara Correia (RFP No. 21). ECF No. 32-3 at 14-16.  In their November 26, 2025 discovery letter and subsequent negotiations,

10

Defendants agreed to provide text messages between Ms. MacDonald and the three identified individuals as well as Julien McCluney regarding Ms. MacDonald's job performance, leave request, and layoff between January 2019 and December 2022.  ECF No. 32-7 at 16; ECF No. 32-13 at 5.  Defendants further agreed to supplement these responses pending the parties agreeing to ESI search terms and custodians.  ECF No. 32-7 at 16.  All four of those individuals were identified as agreed-upon custodians at the time the Court reviewed the parties' ESI protocol, *see* ECF No. 32-14 at 2, and thus, these requests will be satisfied once Defendants review and produce the agreed-upon text messages as well as additional responsive, nonprivileged communications pursuant to the Court's ruling in Section II.B., *supra*.  The Motion to Compel is thus GRANTED IN PART for Request for Production Nos. 18, 19, 20, and 21.

### 4.  Request for Production No. 37

RFP No. 37 seeks organizational charts from before and after the layoffs at issue in the Complaint.  ECF No. 32-3 at 29.  Defendants repeatedly agreed to supplement their original response with an organizational chart depicting Plaintiff's department from after the layoffs.  ECF No. 32-7 at 19; ECF No. 32-13 at 6.  The Motion to Compel is GRANTED IN PART and Defendant is ordered to provide the agreed-upon organizational chart—or supplement their answers to clarify that it does not exist—as part of the additional document review and production ordered in Section II.B., *supra*.

### G.  Privilege

Ms. MacDonald asks the Court to hold that Defendants' privilege objections are waived.  ECF No. 32 at 1.  She notes that Defendants have not yet identified any privileged documents or produced a privilege log.  ECF No. 32-1 at 3.  Ms. MacDonald also asserts that Defendants have stated that any responsive documents relating to the RIF would be privileged, *id.* at 19-21, but

review of the record provided with the Motion to Compel indicates that Defendants conditioned a few of their supplemental responses on privilege that *may* apply, as is their right. *See, e.g.*, ECF No. 32-13 at 5 ("We will produce unless it is privileged."); ECF No. 32-14 at 9 ("[Y]ou agreed to supplement with this information in response to RFPs nos. 27 and 34, to the extent it is not privileged, and provide a privilege log."). In light of the extensive additional discovery contemplated by this Order, addressing the merits of any claims of privilege is premature, and the Motion to Compel is DENIED as to any request to waive privilege. Defendants shall, however, provide a privilege log as to any documents withheld thus far within 30 days from the entry of this Order and all future productions shall be accompanied by a privilege log.

### III.    Plaintiff's Motion for Sanctions

Ms. MacDonald asks the Court to hold that Defendants failed to comply with their discovery obligations and require them to pay her reasonable expenses and attorney's fees in making her Motion to Compel. ECF No. 31 at 1. She argues that she is entitled to sanctions under Federal Rule of Civil Procedure 26(g) because Defendants' "stonewalling tactics caused unnecessary delay and needlessly increased the cost of litigation" (ECF No. 32-1 at 41); under Federal Rule of Civil Procedure 37(a)(5) if the Court grants the motion to compel (*id.* at 44-45); and pursuant to 28 U.S.C. § 1927 based on defense counsel "multipl[ying] the proceedings . . . unreasonably and vexatiously" (*id.* at 44).

Defendants point out that engaging in negotiations over—and offering concessions in hopes of resolving—legitimate discovery disputes does not warrant sanctions and that Ms. MacDonald has herself engaged in conduct that has caused great expense, burden, and delay. ECF No. 39 at 24-27. And as discussed herein, blame for the delay in agreeing to workable search terms lays at the feet of both parties. Given that, and because the Court is granting

Ms. MacDonald's Motion to Compel in some regards while significantly limiting it in others, sanctions are not warranted.

## IV.    Conclusion

Plaintiff's Motion to Strike Objections and Compel Discovery Responses (ECF No. 32) is GRANTED IN PART and DENIED IN PART as specifically detailed herein.  All other requested relief contained in that motion is DENIED.  Plaintiff's Motion for Sanctions (ECF No. 31) is DENIED.


 /s/   Amy E. Moses
AMY E. MOSES
United States Magistrate Judge

June 18, 2026